## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

HARRY SMITH,                          )
                              )
     Plaintiff,                       )
                              )
v.                                    )       Civil Action No. 3:23-cv-144–HEH
                              )
SGT. MORGAN, *et.al.*,                )
                              )
     Defendants.                      )

### MEMORANDUM OPINION
**(Granting Defendant's Motion for Summary Judgment)**

THIS MATTER is before the Court on Harry Smith's ("Smith"), a Virginia inmate, *pro se* and *in forma pauperis* 42 U.S.C. § 1983 Complaint. On September 7, 2023, Smith filed a Particularized Complaint. (ECF No. 13.) By Memorandum Opinion and Order entered on August 9, 2024, the Court granted the Motion to Dismiss filed by Defendants Captain Artis, J. DeBerry, D. Hudson and J.D. Oates and dismissed all claims against those Defendants. (ECF No. 33, 34.) Now before the Court is a Motion for Summary Judgment filed by Defendant Sergeant Morgan, the only remaining Defendant.[1] (ECF No. 26.) Both Defendant Morgan and the Court provided Smith with *Roseboro* notice.[2] (*Id.* at 1–2; ECF No. 35.)[3] Smith has filed several responses. (ECF Nos. 30, 32, 38.) For the reasons set forth below, the Motion for Summary Judgment will be granted.

---

[1] To the extent that Defendants Artis, DeBerry, Hudson, and Oates similarly move for summary judgment, that portion of the Motion for Summary Judgment is moot.

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

## I. Summary of Allegations and Claims

In his Particularized Complaint (ECF No. 13), Smith alleges the following

occurred while he was housed in Deerfield Correctional Center ("DCC"):[4]

1.  On December 6, 2022, Plaintiff was subjected to an institutional search. Sgt. Morgan confiscated Plaintiff's religious medallion which was purchased from the D.O.C. authorized commissary and was strung on a piece of baby white yarn. Both items were purchased on the same receipt dated 9/20/21.
2.  Sgt. Morgan never gave the Plaintiff's property back to him.
3.  Plaintiff filed a written complaint which was answered by Capt. Artis. Capt. Artis never investigated the theft. The Plaintiff was never interviewed, video recording was never reviewed, witnesses were never called. Due diligence was not observed.
4.  Plaintiff then submitted a grievance, and it was answered by Assistant Warden Oates. Mr. Oates never interviewed the Plaintiff, never reviewed the surveillance video, and never called witnesses. Due diligence of the investigation was not followed.
5.  Plaintiff did not receive the grievance paperwork before time for the "Next Action Date" stated on the grievance receipt. Plaintiff followed procedure by filing an appeal without the corresponding paperwork.
6.  The Regional Ombudsman [D. Hudson] rejected the appeal for not having the accompanying paperwork for which he/she claimed was sent to the Plaintiff on Jan. 20, one day before the expiration. However, the Plaintiff did not receive the grievance back until the 23rd and by that time the appeal had been sent.
7.  Plaintiff resubmitted the grievance appeal and explained in the appeal the institutional discrepancy, however, the appeal got rejected once again by D. Hudson due to time violation.

(*Id.* at 1–2.) Smith raises the following remaining claims:

1.  [(a)] It is the belief of the Plaintiff that Sgt. Morgan has violated the Plaintiff's First Amendment right to freely exercise his religious beliefs by depriving him of his sacred religious symbol and not returning it. [(b)] It is

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in the quotations from the parties' submissions.

[4] The Court omits Smith's numbering that corresponds to each Defendant's name.

> also the belief of the Plaintiff that his Fourteenth Amendment right was violated because the Plaintiff feels that he was discriminated against because of his Jewish faith in that no other religious medallions either bought or homemade were confiscated.

(*Id.* at 3.)

## I. Standard of Review

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment.

*Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendant Morgan moves the Court to dismiss Smith's claims because Smith failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendant Morgan bears the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of his Motion for Summary Judgment, Morgan submitted: (1) the affidavit of J. DeBerry, the Grievance Coordinator at DCC (ECF No. 27-1, at 1–5); (2) a copy of Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure § 866.1," ECF No. 27-1, at 6–22); and, (3) Smith's grievance related material (ECF No. 27-1, at 23–37). Smith responded to the Motion for Summary Judgment with a variety of grievance materials and other documents related to his medallion. (ECF Nos. 30-1–14, 38-1–14).[5]

---

[5] Most of these exhibits are duplicative of those submitted by Defendant Morgan.

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motions for Summary Judgment. All permissible inferences are drawn in favor of Smith, the non-moving party.

## II. Relevant Facts

### A. Grievance Procedure at the Virginia Department of Corrections

Operating Procedure § 866.1 requires that, before submitting a Regular Grievance, the inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process. *See* Operating Procedure § 866.1.I.D.1–4. "The first step in in the informal complaint process is for the offender to discuss their issue with staff for a quick resolution." *Id.* § 866.1.I.D.1. If the issue is not resolved verbally, the offender should submit a *Written Complaint. Id.* § 866.1.I.D.2. Prison staff have fifteen (15) days from receipt of the *Written Complaint* to provide an appropriate written response. *Id.* § 866.1.II.B.4. "If the issue on the *Written Complaint* is not resolved to the satisfaction of the offender, or staff fail to provide a written response within fifteen (15) days, the offender may file a *Regular Grievance* .... The *Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident unless a more restrictive timeframe applies." *Id.* § 866.1.I.D.4

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. *Id.* § 866.1.III.C.3, 4. "If the *Regular Grievance* does not meet the intake

criteria, staff has two working days from receipt to complete the *Intake* section of the *Regular Grievance* [form], indicating the reason for rejection, and to return the *Regular Grievance* to the offender." *Id.* § 866.1.III.C.5. "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." *Id.* § 866.1.III.C.6.

### 2. Grievance Review

If the grievance is accepted, within two (2) working days, prison "staff must print and provide the *Grievance Receipt* to the offender as notification of acceptance." *Id.* § 866.1.III.C.4. Once the grievance is accepted for review, the Institutional Ombudsman determines the proper course of investigation. *Id.* § 866.1.III.D.1. "Within 30 days of issuance of the *Grievance Receipt*, each accepted grievance must be investigated, reviewed, completed, and the *Offender Grievance Response – Level I* returned to the inmate unless a continuance is authorized." *Id.* § 866.1.III.F.2.(b).

### 3. Grievance Appeals

"The *Offender Grievance Response – Level I* includes a section for the offender to appeal their grievance response." *Id.* § 866.1.IV.A. The appeal must be submitted within five (5) days of *receipt* of the *Offender Grievance Response. Id.* § 866.1.IV.B.2. The appeal must contain the following: (1) "what piece (the response, the disposition, or the remedy) is being appealed;" (2) how the determination did not address the issue; (3) a suggested remedy; 4) a signature and a date of "the appeal section on the *Offender Grievance Response – Level I.*" *See id.* § 866.1.IV.B.1. Depending on the issue in the grievance, the appeal is addressed by the Director of Offender Management Services, the

6

Health Services Director, the Superintendent for Education, the Chief of Corrections Operations, or the Regional Administrator. *See id.* § 866.1.IV.C.1.a–e. For most issues, the Level II appeal is the final level of review. (ECF No. 21-7, at 3.)

"The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed without satisfactory resolution." *Id.* § 866.1.V.B.

### B. Smith's Grievance Submissions

On December 7, 2022, DCC received a Written Complaint from Smith complaining that Defendant Morgan confiscated Smith's religious medallion and cursed at Smith. (ECF No. 27-1, at 24.) On December 9, 2022, Assistant Warden Oates responded that "the item confiscated was a homemade necklace which is considered contraband" but that the medallion was returned to Smith. (*Id.*) On December 21, 2022, Smith filed a Regular Grievance stating that the medallion had not been returned, his religious rights were violated, and Defendant Morgan had threatened bodily harm, committed elder abuse, and took "advantage of the elderly." (*Id.* at 26.) On January 20, 2023, within the allotted thirty (30) days for a response, Assistant Warden Oates found the Regular Grievance unfounded. (*Id.* at 28.) The response indicated that if Smith was dissatisfied with the response, he could appeal to the Regional Ombudsman within five (5) calendar days. (*Id.*) The five-day period does not begin until after an inmate has received the Level I response.

7

Also on January 20, 2023, before Smith had received the response to his Regular Grievance, he drafted a letter, entitled "Grievance Appeal," wherein he complained that he had not received a response to his Regular Grievance and complained about the incident that occurred on December 6, 2022. (*Id.* at 30–33.) Smith's letter did not, and could not, argue that the Level I decision was incorrect because he had not received the response to his Regular Grievance. Thus, it was not an appropriate Level II appeal. *See* Operating Procedure at § 866.1.IV.B.1. The Regional Ombudsman responded to the letter on January 25, 2023, and communicated that the Level I response to his Regular Grievance was mailed to him on January 20, 2023. (*Id.* at 29.)

Smith received the Level I response to his Regular Grievance on Monday, January 23, 2023. (ECF No. 27-1, at 35.) Under the Grievance Procedure, Smith had five (5) days from his receipt of the response, i.e., January 28, 2023, to appeal the decision to the Regional Ombudsman. (ECF No. 27-1, at 4.) However, Smith waited eight (8) days to submit his appeal. Smith's appeal was postmarked on January 31, 2023, and it was received by the Regional Ombudsman on February 3, 2023. (*Id.* at 34.) Smith's Level II appeal was subsequently rejected as untimely. (*Id.*) Because Smith's Level II appeal was untimely, Smith failed to exhaust his administrative remedies in accordance with VDOC's Grievance Procedure. (*Id.* at 5.)

### III. Exhaustion Analysis

Federal law requires that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in

8

any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The United States Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits," *id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Smith failed to properly exhaust his claim about Defendant Morgan confiscating his religious medallion. Because Smith's Level II appeal was untimely, Smith failed to exhaust his administrative remedies in accordance with VDOC's Grievance Procedure. Moreover, the letter Smith wrote entitled, "Grievance Appeal," did not satisfy the exhaustion requirement. Smith mailed the letter three (3) days before he received the response to his Regular Grievance. Therefore, Smith could not satisfy the requirements

9

for a Level II appeal in which he was required to argue that the Level I decision was incorrect.[6] "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Smith failed to "compl[y] with the [VDOC's] deadlines and other critical procedural rules," with regard to his Level II appeal, and therefore, he failed to properly exhaust his claim against Defendant Morgan. *Woodford*, 548 U.S. at 90. Accordingly, the Motion for Summary Judgment (ECF No. 26) will be granted. The action will be dismissed without prejudice.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: **Jan. 23, 2025**
Richmond, Virginia

---

[6] Smith argues that he "had not received the complaint response by the end of the next 30 days . . . so on 1/21/23, which was a Friday and since no mail is delivered on Saturday (1/22) or Sunday 1/23), the grievance did not go out until the next time mail was picked up . . . ." (ECF No. 38, at 2.) Smith contends that he cannot control the timing of the mail. (*Id.*) It appears that Smith is referring to his "Grievance Appeal" letter which did not comply with the procedure for filing a Level II appeal because he submitted it before he had received a response that his regular Grievance was unfounded. However, Smith readily admitted that he received the response to his regular grievance on January 23, 2023, which was a Monday. (ECF No. 27-1, at 35.) Smith fails to explain why it took him eight days to mail his Level II appeal or why he could not have mailed it within the five days permitted for an appeal by the Grievance Procedure.

10